### In re GRAND JURY PROCEEDINGS.

#### MC No. 09–84.

United States District Court,
D. Rhode Island.

March 19, 2010.

**263**

John P. McAdams, Esq., Lee Vilker, Esq., U.S. Attorney's Office, Providence, RI, for United States.

Robert G. Flanders, Esq., Hinckley, Allen & Snyder LLP, Jeffrey S. Brenner, Esq., David A. Vicinanzo, Esq., Nixon Peabody LLP, Jeffrey B. Pine, Esq., Jeffrey B. Pine, Esq. P.C., John A. MacFadyen, III, Esq., MacFadyen, Gescheidt & O'Brien, Anthony M. Traini, Esq., Providence, RI, Attorneys for Interested Parties.

## OPINION AND ORDER REDACTED FOR PUBLICATION

WILLIAM E. SMITH, District Judge.

In a highly unusual move, the United States has moved this Court to issue an Order allowing it to depose potential witnesses pursuant to Rule 15(a) of the Federal Rules of Criminal Procedure, before it has obtained an indictment against four individuals who are presently targets of an investigation (the "Targets").[1] The exigency behind the government's unprecedented motion is the result of the fact that the alleged scheme targeted individuals standing at death's door. The government seeks to preserve the testimony of the nine remaining terminally ill witnesses of the alleged scheme (over one hundred witnesses having already perished). By using Rule 15(a) to conduct the proposed depositions, the government hopes to avoid any potential Sixth Amendment problems when it seeks to later admit the depositions at the eventual trial, which, if it occurs, will likely be long after the nine witnesses have died. *See Crawford v.*

---

1. While the government brief states that "the grand jury is investigating a fraud scheme," during the hearing on this motion, in response to the Targets' counsel raising a possible Rule 6 violation, counsel for the government indicated that no evidence has actually been presented to the Grand Jury.

*Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).

## Procedural Posture

Upon request of the government, an emergency in-chambers conference was held under seal on Tuesday, September 15, 2009. At the conference, counsel for the Targets was present, although it was made clear at the onset that conflict issues were imminent as one attorney was acting on behalf of three of the Targets. The government requested permission to depose the nine remaining terminally ill witnesses over the next several weeks, in order to preserve their testimony for trial. Counsel for the Targets objected, arguing that Rule 15 had no applicability in a pre-indictment setting. Counsel protested that they were ill-prepared to depose anyone without the benefit of notice of the alleged criminal conduct, discovery, *Jencks* material, and the like. The government countered it was willing to provide such material. The Court held a formal hearing two days later, and the parties submitted well argued briefs on the morning of the hearing. The Court took the matter under advisement and promised a ruling within several days.[2] The parties further supplemented their initial briefs on Monday, September 21st, just prior to the issuance of this opinion.

## The Government's Basis for the Motion

■ At this nascent stage very little is known regarding the facts of the underlying investigation against the Targets. In broad strokes, the government alleges that the Targets approached terminally ill individuals and, in exchange for a few thousand dollars, asked them to sign documents permitting the use of their names as "measuring lives" for certain bonds and annuities. The government alleges that the Targets made false material representations to these individuals in order to induce them to sign the documents and to perpetuate a fraudulent scheme against insurers of the financial instruments. However, as counsel for the government noted during argument, the case is very complex, the legal theory of the case has yet to be fully determined, and no criminal indictment has issued.[3]

During the hearing the government proffered information regarding the witnesses it wishes to depose. The government indicated that approximately three years ago the Targets began approaching terminally ill individuals. Approximately 112 individuals had been identified; however, as noted above, only nine remain alive today. The government offered medical exhibits and information obtained by an FBI interviewer as evidence of the terminal illnesses that the witnesses suffered (the details of the government prof-

---

**2.** This lightning fast process is not without its consequences. Following the conference, the two Targets, who were previously represented by counsel for one of the main Targets, worked to secure independent counsel. One did secure counsel prior to Thursday's hearing, but counsel understandably protested that he was ill-prepared to represent his client having only met him that morning; on Monday, he filed a formal objection the government's motion essentially adopting the arguments of his co-counsel. The other purported Target has not, as of this writing, secured counsel (to the Court's knowledge).

**3.** In response to questions from the Court regarding the government's hesitation to pursue an indictment, the government stated that its policy is to only seek indictment when they are satisfied "beyond a reasonable doubt" that a crime has been committed. Of course, this may be the policy of the United States Attorney's office, but a grand jury indictment only *requires* a showing of probable cause. *United States v. Bergeson,* 425 F.3d 1221, 1226 (9th Cir.2005) ("All a federal grand jury needs to indict is 'probable cause,' and it can indict based on hearsay.").

fer on this point are set forth in this opinion on pp. 272–74, *infra* ).

As the Court discusses in some detail below, the standard of exceptional circumstances has been held (at least in the material witness context) to include terminal illness. Because time was so limited the Court accepted the government's proffer with respect to the terminal nature of the illnesses of the nine proposed witnesses. While the record on this point is less developed than it might be in less urgent circumstances, this element of the government's burden seems easily satisfied given the proffer.

## The Targets' Objection to the Government's Motion

Counsel for the Targets strenuously object to the government's Motion. First, as a threshold matter the Targets contend that Rule 15 does not apply pre-indictment and that this Court has no discretion to authorize a procedure that is not available under the Rule. Second, they contend the government cannot meet its burden of demonstrating materiality, unavailability, or show that this motion is in the interests of justice. Indeed, allowing pre-indictment depositions would be contrary to the interests of justice, the Targets argue, because of the adverse impact upon the "potential" Defendants' Fifth and Sixth Amendment rights to effectively confront and cross examine all trial testimony, and to be fully informed of the charges against them before they are required to defend.

## The Court's authority to grant a pre-indictment deposition

█ A critical threshold issue is whether the Court has the authority to apply Rule 15(a)(1) in a pre-indictment context. Rule 15(a)(1) provides:

(a) When Taken.

(1) In General. A party may move that a prospective witness be deposed in or-

der to preserve testimony for trial. The court may grant the motion because of exceptional circumstances and in the interest of justice. If the court orders the deposition to be taken, it may also require the deponent to produce at the deposition any designated material that is not privileged, including any book, paper, document, record, recording, or data.

There is virtually no case, in any court, at any level, which the parties, or this Court, have been able to locate that confronts *directly* the question of whether the Rule 15(a)(1) deposition process ever may allow for pre-indictment depositions. This is truly a matter of first impression—and both sides readily acknowledge (as does the Court) that whatever the Court decides, the matter will, in short order, be before the First Circuit Court of Appeals for determination. Unfortunately, the limited time and complete dearth of direct authority has left this Court with fewer than usual analytic tools with which to work the problem.

The first consideration, and doubtless the most important, is the text of the rule itself. After all, the rules have "the force and effect of law. Just as a statute, the requirements promulgated in these rules must be obeyed." 1 Charles Alan Wright & Andrew D. Leipold, Federal Practice and Procedure § 32 n. 1 (2009) (citing *Dupoint v. United States,* 388 F.2d 39, 44 (5th Cir.1967)). Advisory Committee notes and even historical context may be helpful interpretive guides, but it is the text of the rule ultimately that governs. *See id.* at § 32.

Rule 2 of the Federal Rules of Criminal Procedure also provides some interpretative guidance. It states that "[t]hese rules are to be interpreted to provide for the just determination of every criminal proceeding. They shall be construed to se-

cure simplicity in procedure and fairness in administration, and to eliminate unjustifiable expense and delay." Fed.R.Crim.P. 2. The United States Supreme Court has said that Rule 2 "sets forth a principle of interpretation to be used in construing ambiguous rules, not a principle of law superseding clear rules that do not achieve the stated objectives." *Carlisle v. United States*, 517 U.S. 416, 424, 116 S.Ct. 1460, 1465, 134 L.Ed.2d 613 (1996).

The plain language of Rule 15 gives discretion to the district court such that "the court may grant the motion because of exceptional circumstances and in the interest of justice." Fed.R.Crim.P. 15(a)(1). This discretion is widely acknowledged by the Courts of Appeal in the post-indictment setting. *See United States v. Mann*, 590 F.2d 361, 365 (1st Cir.1978) ("[T]he language of the rule and prior case authority commit the decision to the discretion of the district court."); *United States v. Rosenstein*, 474 F.2d 705, 715 (2nd Cir.1973) (within the discretion of the trial judge to deny defendant's motion to depose prior to trial); *United States v. Puchi*, 441 F.2d 697, 701 (9th Cir.1971) (where defendant moved to depose two weeks before trial "[t]he granting or denial of a motion under Rule 15(a) rests in the sound discretion of the district court").

Unlike the original Rule 15, there is no language in today's Rule 15 that directly, or even implicitly, prohibits its application in the pre-indictment setting.[4] If the Advisory Committee drafters, or the Supreme Court adopters of the Rules, had intended to limit the taking of depositions to the post-indictment context, it would have been easy enough to do so by retaining the post-indictment limitation that was present from the inception of the rule until 1974 (this historical development is discussed in further detail below).

Both parties rely upon *United States v. Hayes*, 231 F.3d 663 (9th Cir.2000) in arguing the propriety (or impropriety) of pre-indictment depositions. In *Hayes*, the Ninth Circuit Court of Appeals held that pre-indictment depositions taken by the government did not trigger a target's Sixth Amendment right to counsel. *See id.* at 676. Prior to indicting the targets, the government filed, under seal, material witness complaints against four foreign student-witnesses. *See id.* at 668. These material witnesses were scheduled to graduate and return to the United Arab Emirates. *See id.* The government moved to take their depositions and each target was given notice. *See id.* Although the majority did not specifically address the permissibility of pre-indictment depositions, since the question was not before it, the dissent contended that adversary proceedings had begun upon the taking of the deposition, thus triggering the Sixth Amendment right to counsel. *See id.* at 676 (Reinhardt, J., Hug, J., Graber, J., and Fletcher, J., dissenting). In a footnote, the dissenters argued that "[t]he organizational structure of the Federal Rules of Criminal Procedure suggests that Rule 15 does not contemplate pre-indictment depositions." *Id.* at 677 n. 1. To be sure, the Rule is located under section IV dealing with Arraignment and Preparation for Trial. The dissent continued to note that "in no case has the [United States Supreme] Court considered the constitutional consequences

---

**4.** Rule 15 depositions are only permitted to "preserve trial testimony." Although the Targets suspect otherwise, there has been no indication to the Court that the government is seeking these depositions for any other improper purpose, such as to pursue discovery.

*See United States v. Poulin*, 592 F.Supp.2d 137, 145 (D.Me.2008) (denying defendant's Rule 15 motion for pretrial deposition because it was for impermissible purpose of discovery). This point will be addressed in the Court's Order below.

of anything resembling the court-ordered, pre-indictment taking and preserving of *actual trial testimony.*" *Id.* at 678 (emphasis in original).

In dicta, the Fourth Circuit has also stated the view that Rule 15(a) only applies to post-indictment settings because the language of the rule refers to "a party" and "a prospective witness of a party." *United States v. McHan,* 101 F.3d 1027, 1037 (4th Cir.1996) In *McHan,* which like *Hayes* is a pre-*Crawford* case, the government chose to bypass Rule 15 and have its witness testify in grand jury proceedings. The government had knowledge that a material witness was suffering from advanced emphysema and was not expected to live for more than two years. *See id.* at 1031. To preserve his testimony, the government brought the witness before a federal grand jury. *See id.* Approximately two years later, the grand jury returned a superseding 17–count indictment against the defendant. *See id.* at 1032. When the government moved to admit the testimony of the now-deceased witness at trial, the defendant moved to suppress. *See id.* at 1036–37. The defendant argued that a Rule 15 deposition would have afforded the defendant the right to confront the witness. *See id.* at 1037. The Fourth Circuit affirmed the District Court, which admitted the grand jury testimony over defendant's objection, holding that the admittance of the testimony did not violate the Confrontation clause. *See id.* In so holding, the Court noted that the mechanism suggested by the defendant (a Rule 15(a) deposition) was not available prior to indictment. *See id.*

Adding more confusion than clarity, it is notable that the deposed parties in *Hayes* were deemed material witnesses under § 3144, yet the opinion cites generally to Rule 15 and it appears the "government filed a motion to take pre-indictment videotaped depositions," not the deponents. *Hayes,* 231 F.3d at 668. Indeed, the opinion relies on the language of both 15(a)(1) and 15(a)(2). *See id.* at 668. This is confusing because 15(a)(1) and (a)(2) work differently in the procedural sense.[5] Under 15(a)(2) the material witnesses may invoke the taking of a deposition in lieu of detention; while in 15(a)(1) it is the party (i.e. the government, the defendant/Target) that requests the deposition.

In any event, the dissenting judges in *Hayes* took special care to note that the language of Rule 15(a) "plainly contemplates a post-indictment occurrence at which the defendant's right to counsel has indisputably attached, and that seems correct because, prior to indictment, there is no 'defendant,' no 'case,' or even 'party.'"

5. Rule 15(a)(2) provides:
   "*A witness* who is detained under 18 U.S.C. § 3144 may request to be deposed *by filing a written motion* and giving notice to the parties. The court may then order that the deposition be taken and may discharge the witness after the witness has signed under oath the deposition transcript." (Emphasis added).
   Section 3144 deals with the "Release or detention of a material witness" and provides in relevant part:
   If it appears from an affidavit filed by a party that the testimony of a person is material in a criminal proceeding, and if it is shown that it may become impracticable to secure the presence of the person by subpoena, a judicial officer may order the arrest of the person and treat the person in accordance with the provisions of section 3142 of this title. No material witness may be detained because of inability to comply with any condition of release if the testimony of such witness can adequately be secured by deposition, and if further detention is not necessary to prevent a failure of justice. Release of a material witness may be delayed for a reasonable period of time until the deposition of the witness can be taken pursuant to the Federal Rules of Criminal Procedure.

*Id.* at 677. And it is this dissent-based dicta that the Targets heavily rely upon (along with *McHan* ) to suggest that pre-indictment depositions are simply prohibited. Both the *Hayes* dissent and the *McHan* dicta support the Targets' contention that the structure of the Rules can be read to implicitly limit the right of the government (and the defendant for that matter) to preserve trial testimony to the post-indictment context. But, it must be remembered that in both *Hayes* and *McHan* the issue was not directly before the Courts, and further, both cases were pre-*Crawford*. The latter point is important because before *Crawford*, the prosecution had the possible option under the law at that time to bring the dying witnesses before the Grand Jury and later use the testimony at trial if the witness in fact died. This is precisely what occurred in *McHan*. And, as one of the Targets points out in his brief, even under pre-*Crawford* law this approach was not a slam dunk for the government; in the post-*Crawford* world this option is, without doubt, unavailable. Nothing in Rule 15(a) would reasonably have anticipated this important change in Sixth Amendment law.

Moreover, the language and structural analysis is more complicated than the

*Hayes* dissenters and the *McHan* Court (as well as the Targets here) suggest. To begin, although the term 'party' is used in Rule 15(a)(1), the term 'parties' is also used in Rule 15(a)(2), which applies explicitly to detained material witnesses. Rule 46(h)(2),[6] which deals with the biweekly reports the government must provide for detained witnesses, makes clear that material witnesses may be held, and depositions may occur, "pending indictment." [7] It appears to this Court that the use of the terms "pending indictment" in Rule 46(h) gives a clear indication that the drafters of the modern Rule 15(a) in the 1970s conceived of situations where witnesses, whether detained or not, could be deposed prior to an indictment whether in lieu of detention or because of likely unavailability. Therefore, the formalistic reading of the word 'party' advanced by the Targets (and utilized in both *Hayes* and *McHan* ) appears too restrictive.

The Targets point to the history of Rule 15(a) as a reason to deny the government's motion; and while that history gives some superficial support to their argument, a deeper look actually makes it clear that government position is correct, and pre-

---

6. Fed.R.Crim.P. 46(h)(2) provides:

> (2) Reports. An attorney for the government must report biweekly to the court, listing each material witness held in custody for more than 10 days pending indictment, arraignment, or trial. For each material witness listed in the report, an attorney for the government must state why the witness should not be released with or without a deposition being taken under Rule 15(a).

The Targets suggest that the allowance of pre-indictment depositions pursuant to 46(h) and 15(a)(2) for material witnesses is evidence that no such procedure is available for undetained material witnesses. But this simplistic suggestion ignores the fact that 46(h) is a rule about reports to the Attorney General; it was

designed to reduce the number of detained individuals not charged with criminal conduct. Rule 46, Advisory Committee Notes 1966 Amendment. The point here is that 46(h) gives recognition to the fact that depositions may be called for pre-indictment, and in this recognition at least, there is no real difference between a 15(a)(2) and a 15(a)(1) deposition. The sockdolager on this point is the actual history of Rule 15 discussed below.

7. The government indicated in passing at the hearing that perhaps it should have pursued this avenue (the material witness approach) to achieve its ends. The Court sees no reason to address whether this procedure may be available because the issue is not before the Court and §§ 3142 and 3144 have not been sufficiently briefed by the parties.

indictment depositions were contemplated by the revision to Rule 15(a) in 1974.

When the Federal Rules of Criminal Procedure were first adopted in the 1940s, long before the split between 15(a)(1) and (a)(2) was fashioned, only a defendant was authorized to take depositions per Rule 15(a). Lester B. Orfield, *Depositions in Federal Criminal Procedure* 9 S.C. L.Q. 376 (1956–57); *see* Fed.R.Crim.P. 15 Advisory Committee Notes, 1944 Adoption.[8] In its original form, the Rule clearly contemplated only post-indictment depositions, and only by the defendant. The language "after the filing of an indictment or information" did not survive the later development of Rule 15, and its absence speaks volumes.

During the 1940s, as the Rules were being developed by the Supreme Court Advisory Committee, numerous proposals were made to allow the government to depose witnesses in criminal proceedings, in order to preserve testimony for trial on an equal footing with defendants. It was vigorously debated, however, "whether depositions taken by the government would be constitutional." Orfield, *supra* at 378. Commentators, practitioners, and judges lined up on both sides of the issue during the drafting phase, which occurred over some years. Ultimately, the Advisory Committee proposal to the Supreme Court allowed for government depositions; but, these suggestions were rejected by the Court, and not included in the final Rule submitted to Congress. *See id.*

Orfield notes that the second draft of the Rules of Criminal Procedure, dated January 12, 1942, attempted to deal with the issue of criminal depositions in Rule 57. During these early years, the Criminal Rules referenced the Rules of Civil Procedure for many mechanical details. One notable exclusion, Orfield notes, was "Civil Rule 27 ... because it relates to depositions to perpetuate testimony taken before the institution of an action and therefore is not germane to criminal procedure." *Id.* at 379; *see also In re Application of Eisenberg*, 654 F.2d 1107, 1113 n. 9 (5th Cir.1981) ("[T]here is no rule in criminal procedure analogous to Rule 27 by which a deposition can be taken by a potential defendant prior to the initiation of prosecution. Depositions of a party's own witness are allowed during the pendency of a criminal action only when preservation of the testimony is in the interest of justice due to exceptional circumstances."). Although proponents of government deposition authority were unsuccessful in the early years, Orfield notes that "seventeen states [had] conferred the right by statute." *Id.* at 398. And so there existed, for over twenty-five years, from the adoption of the Rules until 1970, no government avenue to request depositions in federal criminal matters. The right to request depositions belonged only to defendants *and* explicitly was limited to after the filing of an indictment or information.

It was not until the passage of the Organized Crime Control Act of 1970 that the

---

8. Originally, Rule 15(a) provided:

If it appears that a prospective witness may be unable to attend or prevented from attending a trial or a hearing, that his testimony is material and that it is necessary to take his deposition in order to prevent a failure of justice, the court at any time *after the filing of an indictment or information* may upon motion of a defendant and notice to the parties order that his testimony be taken by deposition ... If a witness is committed for failure to give bail to appear to testify at a trial or hearing, the court on written motion of the witness and upon notice to the parties may direct that this deposition be taken, After the deposition has been subscribed the court may discharge the witness.

Fed.R.Crim.P. 15(a) (reprinted in Orfield, *supra,* at 376) (emphasis added).

government began to make headway in its quest for the authority to take depositions. As part of that legislation, 18 U.S.C. § 3503(a) (Title VI) allowed the government to take depositions in a criminal case when a defendant was alleged to have participated in organized criminal activity. Title VI retained the language of then-applicable Rule 15, limiting the availability of depositions to "after the filing of an indictment or information." *See* 41 A.L.R. Fed. 764, *Depositions to preserve testimony under 18 U.S.C.A. § 3503* (1979).

Beginning again with the 1971 preliminary draft of proposed changes to the criminal rules, the Advisory Committee attempted to codify into the Rules the government right to depose. In the 1971 draft, however, the limitation "after the filing of an indictment or information" was eliminated. Committee on Rules of Practice and Procedure, 52 F.R.D. 409, 438 (1971). The "redlined" version of Rule 15(a) that appears in the proposed rule clearly strikes this limitation;[9] but the notes accompanying the draft give little insight as to the Advisory Committee's reasoning. The notes clearly refer to the passage of the Organized Crime Control Act of 1970 as the impetus, and leave little doubt that the intent of the Committee was to sweep somewhat broader, while also providing certain procedural protections to deponents. Excerpts from the Advisory Committee notes reveal some (but not much) of the thinking of the Committee:

The proposed revision of rule 15 authorizes the taking of depositions by the government. Under present rule 15 only a defendant is authorized to take a deposition. *The revision is similar to Title VI of the Organized Crime Control Act of 1970.* The principal difference is that [sic] Title VI (18 U.S.C. § 3503) limits the authority of the government to take depositions to cases in which the Attorney General certifies that the "proceeding is against a person who is believed to have participated in an organized criminal activity." *This limitation is not contained in proposed rule 15.* Dealing with the issue of government depositions so soon after the enactment of 18 U.S.C. § 3503 is not inconsistent with the congressional purpose. On the floor of the House Congressman Poff, a principal spokesman for the proposal, said that the House version was not designed to "limit the Judicial Conference of the United States in the exercise of its rulemaking authority ... from addressing itself to other problems in this area or from adopting a broader

---

9. In April 1971, the Committee on Rules of Practice and Procedure submitted a preliminary draft of proposed amendments to the Federal Rules of Criminal Procedure for the United States District Courts. 52 F.R.D. 409 (1971). The proposed amendments for Rule 15 Depositions provided:

(a) WHEN TAKEN. ~~If it appears that a prospective witness may be unable to attend or prevented from attending a trial or hearing, that his testimony is material and that it is necessary to take his deposition in order to prevent a failure of justice,~~ *Whenever due to special circumstances of the case it is in the interest of justice that the testimony of a prospective witness of a party be taken and preserved for use at trial,* the court ~~at any time after the filing of an indictment or information~~ may upon motion of ~~a defendant~~ *such party* and notice to the parties order that his testimony of such witness be taken by deposition and that any designated ~~books, papers, documents or tangible objects,~~ *book, paper, document, record, recording, or other material* not privileged, be produced at the same time and place. If a witness is committed for failure to give bail to appear to testify at a trial or hearing, the court on written motion of the witness and upon notice to the parties may direct that his deposition be taken. After the deposition has been subscribed the court may discharge the witness. *Id.* at 438–39.

approach." 116 Cong. Rec. H9709 (Oct. 7, 1970, daily ed.).

52 F.R.D. at 442–43 (emphasis added).

In 1974, after years of rebuffing the proposed change, the Supreme Court proposed a myriad of amendments to the Federal Rules of Criminal Procedure, one of which was to allow both parties (the government and the defendant) to move to take depositions in a criminal proceeding. H.R.Rep. No. 94–247, at 10 (1975). The proposed amendments passed, and the current version of Rule 15 reflects those changes, clearly establishing the government's authority to request depositions in criminal proceedings.[10] *See* Fed.R.Crim.P. 15(a). Most interesting and relevant to the task at hand is that "after the filing of an indictment or information" was deleted from the rule in the 1971 draft.

The sum of this history seems to be that with the passage of the Organized Crime Control Act in 1970 the government was first empowered to take depositions. This was a limited power, as it included both a post-indictment or information limitation, and a requirement that the Attorney General certify the defendant was believed to be involved in organized criminal activity. Then, in 1971 the Advisory Committee, responding to the Organized Crime Control Act, attempted to again introduce the concept of government depositions into Rule 15 (an effort that began in the 1940s, as discussed above). In drafting the proposal, however, the Advisory Committee eliminated both the organized crime certi-

fication and the post-indictment or information requirement. The Committee gave little explanation regarding these specific aspects of the rule change. Moreover, the Committee draft restructured Rule 15 to incorporate the "special circumstances" and the "interests of justice" (a slight rewording of the prior rule) requirements.

The Supreme Court, after initially rejecting these changes, proposed them to Congress as part of the 1974 Rules Amendment, and Congress, in due course, adopted the proposed changes, again with little in the way of explanation on the critical point in question. The bottom line is the language was eliminated from the Rule in 1974.[11]

The Targets take from this history that the Supreme Court never intended to allow pre-indictment depositions; that, in fact, the allowance of a prosecutorial vehicle to preserve testimony was expected by the Court to be a very circumscribed grant of authority. While not a completely unreasonable reading of the development of Rule 15(a), it is not the most reasonable reading of the history. The better reading of this history is that the Court, in finally adopting the changes supported by the Rules Committee, intended to give the authority to conduct depositions (in both material witness situations and other exceptional circumstances) to both the government and defendants/targets, subject to the oversight of the district court. In fact, to agree with the Targets would be to effectively put back

---

**10.** In 2002, long after Rule 15 was amended to include the government, 18 U.S.C. § 3503 was repealed as "duplicative authority." 116 Stat. 1758, 1809.

**11.** There is one historical anomaly worth mentioning, although it does not change the Court's analysis or conclusion. It appears that from 1974 through 2002, the year the Organized Crime Control Act was repealed,

both Rule 15 (containing the government right to depose with no post-indictment limitation, nor subject matter limitation) and Title VI of the Organized Crime Control Act (with these latter limitations) were operative. How this could work is by no means clear to the Court; but, with the repeal of the Organized Crime Control Act, the anomaly becomes little more than a historical curiosity.

into the rule a limitation taken out by the Supreme Court and Congress. This may be good policy, but it should not be judicially imposed policy in the face of this clear history.

Target counsel persuasively argued at the hearing that if the shoe were on the other foot, and the Targets were seeking to preserve testimony during an ongoing grand jury investigation, then the government would oppose and the Court would deny their request in a heartbeat. The government claimed at hearing that in the circumstances of this case it would not oppose any such effort. It is hard to imagine the scenario, but in any event this does little to elucidate the meaning of the rule.

Finally, the Targets argue that in spite of the government's assurances to the contrary, the proposed depositions are in fact discovery depositions not trial testimony preservation. Therefore, they say, the proposed depositions violate the clear rule against pretrial discovery. Moreover, the Targets claim that the Court may inadvertently march [redacted] if it attempts to control how the government may use the deposition testimony if allowed. [redacted]; *see United States v. Williams*, 504 U.S. 36, 55, 112 S.Ct. 1735, 118 L.Ed.2d 352 (1992) ("courts have no authority to prescribe such a duty [on a prosecutor] pursuant to their inherent supervisory authority over their own proceedings") and *In re Impounded*, 241 F.3d 308 (3d Cir.2001) (holding courts may not impose substantive limitation on the power of the grand jury to issue subpoenas, nor place the initial burden on the government to prove the validity of its subpoenas).

Once again, counsels' arguments are well taken, but ultimately unpersuasive.

As the Order below makes clear, the Court believes it can formulate an order that 1) holds the government to its word that the proposed depositions are intended for trial (and not presentation to the grand jury); 2) that ensures the playing field is leveled (as much as feasible) to replicate the trial setting; and 3) does not interfere with the grand jury function.

■ In light of the plain language of Rule 15(a), its history, as well as the analysis discussed above, the Court finds it has the discretion to grant the motion, and the government has the authority to conduct pre-indictment depositions to preserve trial testimony. The government, however, must still meet its burden as the moving party to show that "exceptional circumstances" mandate this action and that it is "in the interests of justice" to do so.[12] The Court is cognizant that "the language of the rule suggests that the discretion is not broad and should be exercised carefully." *Mann*, 590 F.2d at 365.

## Exceptional Circumstances

### Unavailability

■ "[I]t nevertheless has been established that when the district court exercises its discretion in ruling on a Rule 15(a) motion, considerations of materiality (of the testimony) and unavailability (of the witnesses) remain critical." *United States v. Ismaili*, 828 F.2d 153, 159 (3d Cir.1987) (citing *United States v. Johnson*, 752 F.2d 206, 209 (6th Cir.1985); *United States v. Bello*, 532 F.2d 422, 423 (5th Cir.1976); *United States v. Sun Myung Moon*, 93 F.R.D. 558 (S.D.N.Y.1982), *cert. denied*, 466 U.S. 971, 104 S.Ct. 2344, 80 L.Ed.2d

**12.** This is essentially the same test utilized for depositions of material witnesses in lieu of arrest and detention under Rule 15(a)(2). *See*

*United States v. Drogoul*, 1 F.3d 1546, 1552 (11th Cir.1993).

818 (1984)). The government made the following proffer:

[redacted]

The exhibits presented to the Court include various doctors' notes and lists regarding the medications that the potential witnesses are taking. For example, Dr. Rosado, attending physician to [redacted], states that "[redacted] is a 79 y/o patient ... with newly diagnosed stage IV Non–Small Lung Cancer metastaic to the adrenal. As per his multiple co-morbidities, his advanced age and his borderline performance status he is [a] candidate to Best supportive Care and chemotherapy is not recommended. His expected survival is in [the] months and when his symptoms get worse, he will be [a] candidate for hospice care." Similarly, the government proffers a list by [redacted] physician outlining his condition, which indicates that his time is limited. Additional documentation is provided for [redacted], [redacted], [redacted], and [redacted].

One of the Targets in supplemental briefing argues strongly that the government has failed to meet its burden here. He contends that the medical records are scant, the proffer replete with hearsay, and the assertions are nothing more than government agents' speculation. But the issue is not whether the Court believes the witnesses will die within the next week or two; rather it is whether there is a likelihood that they will be available for trial.

Unavailability may occur certainly because of death, but may also be caused by severe medical condition that prohibits attendance at trial, or affects memory or speech. Based upon the government's proffer outlined above, the Court concludes with little difficulty that the potential witnesses will, in all probability, be unavailable should a trial come to pass at some point in the future.

Rule 804(a) of the Federal Rules of Evidence defines unavailability of a witness to include an inability "to be present or to testify at the hearing because of death or then existing physical or mental illness or infirmity." The First Circuit has used this test in the context of determining the propriety of admitting video deposition testimony per Rule 15(e) of two elderly and infirm witnesses in *Keithan*, and other courts have also agreed with this approach. *See e.g.,* Laurie L. Levenson, Federal Criminal Rules Handbook, 213 n. 17 (2009) (citing *United States v. Sudeen,* 2002 WL 31427364 (E.D.La.2002) (witness who was in poor health and resided in Poland, and had already traveled to the United States but could not return for rescheduled trial date, could be deposed); *United States v. Donaldson,* 978 F.2d 381 (7th Cir.1992) (witness who recently gave birth and had been hospitalized with chest pains was considered unavailable and justified use of videotaped deposition); *United States v. Keithan,* 751 F.2d 9 (1st Cir.1984) (government witness' advanced age constituted exceptional circumstances); *United States v. Terrazas–Montano,* 747 F.2d 467 (8th Cir.1984) (exceptional circumstances existed when witnesses went on dangerous hunger strike); *Furlow v. United States,* 644 F.2d 764 (9th Cir.1981) *cert. denied,* 454 U.S. 871, 102 S.Ct. 340, 70 L.Ed.2d 175 (1981) (witness' illness warranted deposition); and *United States v. Dunseath,* 1999 WL 165703 at *1–2 (S.D.N.Y.1999) (exceptional circumstances existed when witness was 86 years old and the legal guardian for his elderly wife who was suffering from advanced Alzheimer's disease)).

It is undisputed that the potential witnesses are all at varying stages of terminal illness, and have been (in some cases) for several years outliving their prognosis. They are (apparently) the last nine people with direct knowledge of what transpired, out of an original 112 who participated. Of

course, it is no tragic coincidence that this is the case; the government alleges that the witnesses' imminent death was precisely why they were used as "measuring lives" to begin with. The fact that many of the potential witnesses have outlived their doctor's predictions of life expectancy and are alive today, is, for the government, a case-making stroke of luck—but one that only yields its potential benefit if the requested depositions are allowed. For these reasons, the Court concludes that the unavailability prong is met.

## Materiality

█ At hearing, the government noted that although its legal theories are still in a nascent stage, the testimony of these remaining individuals was determined to be of material significance. Materiality is defined in Blacks Law Dictionary as "having some logical connection with the consequential facts." In the context of basic evidentiary rules defining relevance, "[m]ateriality concerns the fit between the evidence and the case. It looks to the relation between the propositions that the evidence is offered to prove and the issues in the case.... What is 'in issue' ... is determined mainly by the pleadings, read in the light of the rules of pleading and controlled by the substantive law." 1 Kenneth S. Broun, *McCormick on Evidence*, § 185 (6th ed. 2006).

The government proffered that the testimony from these witnesses that needed to be preserved for any future prosecution included: what representations the targets made to them to induce them to sign the consent forms, whether they understood they were being used as measuring lives, and whether they were told the money they were receiving was for charity. It is unclear whether any other healthy witnesses were present when the exchanges between the targets and the terminally ill witnesses took place. However, even if

such individuals were present, this would not affect the materiality calculus. While it is true that this calculation is more difficult to make where there is not yet a "case" or an indictment to base the comparison upon, the Court concludes based upon the government's representations that the testimony of these individuals is in all likelihood material to the determination of whether fraudulent conduct occurred.

## The Interests of Justice

█ The next consideration, whether the interests of justice are best served in granting the government's motion, raises for the Court a difficult question because it arises within the confines of a pre-indictment, post-*Crawford* setting. Permitting pre-indictment depositions places citizens, who are under the spotlight of investigation but not yet formally accused, in the dangerous position of having to defend against what is intended to be trial testimony, before any formal adversary proceeding has been triggered, and without the benefit of knowing precisely the basis of the government's allegations or its legal theories. Further, once the trigger of an indictment has been pulled, other benefits (such as discovery and the timeline of the Speedy Trial Act) come into play. It is debatable whether the Targets' Sixth Amendment rights can be afforded full respect in a context such as this, and counsel for the Targets ask if the Sixth Amendment right has even attached. The government appears to concede it has; but the Targets are understandably skeptical and suspicious that their position will change later on. But there is a remedy, if one is required, in the form of a motion to suppress before trial.

While the Sixth Amendment implications are serious, this Court cannot be insensitive to the facts at hand. [redacted] The Court has concluded that the Rule does apply, and thus, the government should

have the opportunity to preserve the testimony. A potential criminal scheme targeting terminally ill individuals should not escape prosecution simply because of the foresight to utilize the dying, none of whom ever will be able to take the stand. Furthermore, the government motion seeks to preserve the potential defendants' *Crawford* rights, by force apparently, if only for its self-interest in assuring the admittance of the testimony at trial.

This is without question a close call. The Court is reminded that the First Circuit has stated:

> we do not mean to suggest that courts should be fearful to exercise their proper fully informed discretion to allow a deposition. When the question is close a court may allow a deposition in order to preserve a witness' testimony, leaving until trial the question of whether the deposition will be admitted as evidence. At that time, if the witness proves unavailable, the court may have before it a more complete information base. F.R.Crim. P. 15(e) accords no presumption of admissibility simply because the deposition was taken. The party requesting the deposition cannot escape its burden of taking all reasonable steps to bring to trial a witness whose testimony the party chooses to present. And the major harm to the other party's interests does not occur unless the deposition is admitted.

*Mann,* 590 F.2d 361 at 366–67. The words of the *Mann* court are about the best guidance this Court could hope for in resolving this difficult issue. Under the peculiar circumstances of this case, unlikely as it is to pass this way again, the Court finds that the government has met its burden and the balance regarding the interests of justice must tip in the government's favor.

**Conclusion and Order**

In granting the government's motion, the Court nevertheless intends to narrowly craft an order appropriate to the circumstances of this case. Therefore it is ordered as follows:

1. The Government's motion pursuant to Rule 15(a)(1) is GRANTED, subject to the conditions set forth below;

2. All Targets shall be offered the opportunity to be represented at the depositions and each shall be afforded the opportunity to examine the witness.

3. The Government must make a full disclosure to the Targets of all materials which would be disclosed in the usual course under Fed. R. Crim. P. 16 including any and all *Brady* and *Jencks* statements;

4. Upon completion of some or all of the depositions, any Target may request an opportunity to re-depose a witness if circumstances warrant;

5. The Court reserves for trial (whether before this or another District Judge) any issues with respect to admissibility of the deposition (including Motions to Suppress);

6. While the Court may not order that the Government refrain from using such depositions in the Grand Jury, the Court takes the government counsel at their word that this is not the purpose and intent of the depositions; use of the depositions at Grand Jury therefore would subject counsel to the remedial and disciplinary authority of this Court.

7. All witnesses may be represented by counsel, if they wish, and as unlikely as the case may be, the government shall advise all deponents of their 5th Amendment rights if circumstances dictate, as if the witnesses were in the courtroom.

8. The Court's order shall be stayed for 48 hours in order to allow the Targets to initiate an appeal. The Stay shall then be lifted for witnesses [redacted] and [redacted], but stayed for five additional days for the remaining witnesses.

IT IS SO ORDERED.