# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
  *Plaintiff-Appellee,*

v.

JUAN LEONARDO MATUS-ZAYAS,
  *Defendant-Appellant.*

No. 09-10294

D.C. No.
4:08-cr-00870-
CKJ-HCE-3

OPINION

Appeal from the United States District Court
for the District of Arizona
Cindy K. Jorgenson, District Judge, Presiding

Argued and Submitted
August 30, 2010—San Francisco, California

Filed August 24, 2011

Before: Betty B. Fletcher, Richard C. Tallman, and
Johnnie B. Rawlinson, Circuit Judges.

Opinion by Judge Rawlinson

16217

## COUNSEL

Harriette P. Levitt, Tucson, Arizona, for the defendant-appellant.

Dennis K. Burke, United States Attorney, Christina M. Cabanillas, Appellate Chief, Bruce M. Ferg, Assistant United States Attorney, Robert L. Miskell, Assistant United States Attorney (argued), Tucson, Arizona for the plaintiff-appellee.

## OPINION

RAWLINSON, Circuit Judge:

Appellant Juan Leonardo Matus-Zayas appeals his conviction on various counts related to transporting and harboring illegal aliens. Matus-Zayas specifically challenges the district court's decision to admit into evidence videotaped deposition testimony of detained material witnesses pursuant to 18 U.S.C. § 3144. For the first time on appeal, Matus-Zayas argues that the statute is facially invalid and that the court erred by permitting the government to admit the depositions into evidence at trial without any showing of a witness's unavailability. He also argues that the magistrate judge failed to comply with the statute and that certain procedural requirements of Federal Rule of Criminal Procedure 15 and General

Order 05-34 of the United States District Court for the District of Arizona were unmet.

Though the bulk of Matus-Zayas's claims are meritless, we do agree that the court plainly erred by permitting the government to introduce the now-contested depositions into evidence without a showing of unavailability. Ultimately, however, we decline to accord Matus-Zayas any relief because we are not persuaded that "the error seriously affect[ed] the fairness, integrity, or public reputation of [the] proceedings." *United States v. Hammons*, 558 F.3d 1100, 1103 (9th Cir. 2009) (citation and internal quotation marks omitted). We therefore affirm the district court's judgment of conviction.

## I.  BACKGROUND

### A.  Pre-Trial Proceedings

On or about June 10, 2008, Matus-Zayas and three co-defendants were arrested in or near Rio Rico, Arizona. The arrests were made by Border Patrol agents who were conducting surveillance on a residence that was suspected to be a staging area for illegal aliens. The agents ultimately obtained and executed a search warrant for the residence, resulting in the discovery of thirty-six illegal aliens. Five of the aliens were identified as material witnesses with potential information implicating Matus-Zayas and his co-defendants in a scheme to transport and harbor illegal aliens.

The government filed a Complaint alleging that Matus-Zayas and his co-defendants conspired "with each other and with other persons known and unknown to transport and harbor illegal aliens" in violation of 8 U.S.C. §§ 1324(a)(1)(A)(ii), 1324(a)(1)(A)(iii), 1324(a)(1)(A)(v)(i), and 1324(a)(1)(B)(i). The magistrate judge assigned to the case granted the government's motion to temporarily detain the five material witnesses. The government subsequently

filed an Affidavit for Detention of Material Witnesses requesting that the material witnesses be detained pursuant to 18 U.S.C. §§ 3142 and 3144. In the affidavit, the government noted that the material witnesses were citizens of Mexico, and "would return to Mexico to reside if released . . ." The government also declared that if the material witnesses were released from custody and returned to Mexico, their presence for further proceedings in the case "could not be required by subpoena of the court system of the United States, and securing such presence by subpoena would become impracticable."

On June 16, 2008, the government filed a notice of hearing indicating that the depositions of the material witnesses would be taken on July 1st and 3rd of 2008. After the magistrate judge entered an order continuing the depositions to August 4th and 5th of 2008, Matus-Zayas and his co-defendants were indicted on eleven counts of conspiracy to transport and harbor illegal aliens for profit, transportation of illegal aliens for profit, and harboring illegal aliens for profit.

On July 30, 2008, Matus-Zayas filed a motion objecting to the government's request to depose the material witnesses, and requesting the district court to detain the material witnesses for trial. Matus-Zayas argued, among other things, that no exceptional circumstances existed to justify taking the depositions of the material witnesses prior to trial, and that his constitutional rights to confront and cross-examine the material witnesses at trial would be violated if the depositions proceeded.

At a hearing on the motion, the government took "no position if the depositions don't go through and [the material witnesses] are held [for trial]." However, the government did argue that the material witnesses should not be released from custody because they would likely return to Mexico and "disappear." The attorney for the material witnesses, on the other hand, contended that the depositions of his clients should be

permitted to go forward because they had already been detained for over twenty days.

After considering the parties' arguments, the magistrate judge ruled that the affidavit filed by the government placed Matus-Zayas's attorney on notice that the material witnesses "were citizens of another country and that the government's subpoena power would be basically ineffectual." The magistrate judge explained that the government had moved pursuant to Federal Rule of Criminal Procedure 15 to take the depositions of material witnesses, and found that exceptional circumstances justified granting the motion. Specifically, the magistrate judge delineated the following circumstances: the material witnesses were in the country illegally, criminal charges had not been filed against the witnesses, and the witnesses would be deported to Mexico if released, thereby depriving the government of "authority . . . to obligate them to return for the giving of testimony." The magistrate judge also considered the fact that Matus-Zayas would have an opportunity to cross-examine the material witnesses during the depositions, and that the depositions would be recorded by videotape so that the jury would have the opportunity to "assess the demeanor of the [material witnesses]." The magistrate judge determined that after the depositions had been taken, the material witnesses would be released "absent a showing that further detention [was] necessary to prevent a failure of justice . . ."

On August 4, 2008, the depositions of three of the five material witnesses were taken and recorded on videotape. Matus-Zayas was represented by an attorney other than his attorney of record, who was unable to attend. On the same day, the government and Matus-Zayas's three co-defendants jointly moved to release the material witnesses from custody. The magistrate judge thereafter ordered that the material witnesses be released "to the Department of Homeland Security for return to their country of origin."

On August 20, 2008, a Superseding Indictment was filed charging Matus-Zayas with an additional count of illegal reentry. In a re-numbered Superseding Indictment, Matus-Zayas was charged in Count 1 with conspiracy to transport and harbor illegal aliens for profit, in Counts 2-4 with transportation of illegal aliens for profit, in Counts 5-7 with harboring illegal aliens for profit, and in Count 8 with illegal reentry.

## B.    Trial Proceedings

A four-day jury trial began on April 28, 2009.[1] On the first day of trial, Border Patrol Agent Philip Bidwell testified concerning the surveillance he conducted and his questioning of Matus-Zayas that resulted in Matus-Zayas's arrest. Bidwell also described how a Border Patrol Special Response Team executed a search warrant at the subject residence shortly after Matus-Zayas was arrested, resulting in the discovery of thirty-six illegal aliens.

On the second day of trial, the government played for the jury a recorded interview that had taken place between Border Patrol Agent Agapito Medina and Matus-Zayas on the day of Matus-Zayas's arrest. During the interview, Matus-Zayas admitted that he had entered the United States illegally. Matus-Zayas also admitted to staying at the subject residence, but denied any involvement in the staging activities.

As part of its case, the government played for the jury the videotaped depositions of the three material witnesses. The first witness testified that he had come to the United States illegally, and that he had learned from the "manager" of the subject residence that Matus-Zayas would be a person who could help him get past a border checkpoint located between Nogales, Arizona and Tucson, Arizona. The first witness

---

[1]Matus-Zayas's co-defendants avoided trial by pleading guilty to Count 1 of the re-numbered Superseding Indictment.

explained that he subsequently had a conversation with Matus-Zayas, and Matus-Zayas confirmed that he could indeed assist the witness in getting past the checkpoint.

The second witness testified that he had likewise come to the United States illegally, and that he had made prior arrangements to pay $3,000 to be taken to Atlanta, Georgia. The second witness related that after he crossed the border into the United States, he was picked up by Matus-Zayas at a fast-food restaurant. Matus-Zayas drove the witness to the subject residence, and the witness never saw Matus-Zayas again.

The third witness similarly testified that he crossed the United States border illegally, and that Matus-Zayas picked him up at a McDonald's in Nogales before driving him to the subject residence. As with the second witness, the last time the third witness saw Matus-Zayas was when the witness was dropped off at the subject residence.

Border Patrol Agent Charles Fulgham testified to the contents of Matus-Zayas' alien registration file (A-file), and identified documents establishing that Matus-Zayas had previously been ordered removed or deported from the United States. Kenneth Woods, a fingerprint specialist, verified that fingerprints taken from Matus-Zayas during trial matched the fingerprints from documents found in Matus-Zayas' A-file.

On the third day of trial, Matus-Zayas testified on his own behalf. On direct examination, Matus-Zayas specifically denied ever smuggling illegal aliens. Matus-Zayas admitted staying at the subject residence for two days, but declared that he "had no duties [at the residence]." Matus-Zayas stated that he never provided food for any illegal aliens at the residence, and that he never "knowledgeably" drove anyone that was an undocumented alien. Matus-Zayas remarked that he never accepted any money for anything related to illegal alien smuggling operations. Although Matus-Zayas conceded that

he had described himself to the material witnesses as a "guide," he explained that he did so to "calm them down[.]" According to Matus-Zayas, he never actually guided anyone through the desert.

On cross-examination, Matus-Zayas acknowledged that he drove two of the material witnesses to the subject residence in another person's car from a McDonald's "[b]ut not knowing they were illegal." Notwithstanding his earlier testimony, Matus-Zayas testified on cross-examination that he did not actually tell the material witnesses he was a guide, but did tell them he knew how "[they] could get there" and that the material witnesses should "calm down and not leave the house."

The jury convicted Matus-Zayas on all eight counts of the re-numbered Superseding Indictment. However, the jury did not find that Matus-Zayas had committed the acts described in Counts 1-7 for profit. The district court sentenced Matus-Zayas to 60 months' imprisonment on Counts 1-7, and 70 months' imprisonment on Count 8, with the sentences to run concurrently. Matus-Zayas filed a timely notice of appeal. We have jurisdiction pursuant to 28 U.S.C. § 1291, and affirm the convictions.

## II.  STANDARDS OF REVIEW

As a general rule, "[q]uestions of statutory interpretation are reviewed de novo." *United States v. Youssef*, 547 F.3d 1090, 1093 (9th Cir. 2008) (per curiam) (citation omitted). Similarly, we generally review "claims of a violation of the Confrontation Clause de novo." *United States v. Nguyen*, 565 F.3d 668, 673 (9th Cir. 2009) (citation omitted). However, "[i]f the defendant failed to object to the admission of evidence under the Confrontation Clause, we review for plain error." *United States v. Hagege*, 437 F.3d 943, 956 (9th Cir. 2006) (citation omitted).

We ordinarily review "de novo a district court's interpretation of the Federal Rules of Criminal Procedure." *United*

*States v. Fort*, 472 F.3d 1106, 1109 (9th Cir. 2007) (citation omitted). "[A] district court's decision . . . to grant or deny a deposition under Federal Rule of Criminal Procedure 15(a)" is reviewed for abuse of discretion. *United States v. Olafson*, 213 F.3d 435, 441 (9th Cir. 2000), *as amended* (citations omitted).

"Issues raised for the first time on appeal are reviewed for plain error." *United States v. Baramdyka*, 95 F.3d 840, 844 (9th Cir. 1996) (citations omitted). "Plain error is (1) error, (2) that is plain, and (3) that affects substantial rights." *Hammons*, 558 F.3d at 1103 (citation and internal quotation marks omitted). "If these three conditions are met, th[is] court may then exercise its discretion to grant relief if the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* (citation and internal quotation marks omitted).

"An error is not plain unless it is clear or obvious." *United States v. Zalapa*, 509 F.3d 1060, 1064 (9th Cir. 2007) (citation, alteration, and internal quotation marks omitted). "Plain error is so clear-cut, so obvious, a competent district judge should be able to avoid it without benefit of objection." *Id.* (citation omitted).

## III.  DISCUSSION

### A.  18 U.S.C. § 3144[2]

---

[2]18 U.S.C. § 3144 provides:

> If it appears from an affidavit filed by a party that the testimony of a person is material in a criminal proceeding, and if it is shown that it may become impracticable to secure the presence of the person by subpoena, a judicial officer may order the arrest of the person and treat the person in accordance with the provisions of section 3142 of this title. No material witness may be detained because of inability to comply with any condition of release if the testimony of such witness can adequately be secured by deposition, and if further detention is not necessary to prevent a failure of justice. Release of a material witness may be delayed for a reasonable period of time until the deposition of the witness can be taken pursuant to the Federal Rules of Criminal Procedure.

### 1. Matus-Zayas's Facial Challenge To 18 U.S.C. § 3144

**[1]** Matus-Zayas contends that § 3144 is unconstitutional on its face because it infringes upon a defendant's Sixth Amendment right to confront and cross-examine the witnesses against him. Because this argument was never raised before the district court, plain error review applies. *See Baramdyka*, 95 F.3d at 844.

We rejected a similar argument in *United States v. Santos-Pinon*, 146 F.3d 734, 736 (9th Cir. 1998). Santos-Pinon argued that 8 U.S.C. § 1324(d), "which allows videotaped depositions of deported witnesses to be introduced into evidence[,]" "is unconstitutional on its face because it does away with the 'good faith efforts' standard of establishing unavailability[.]" *Id.* at 735-36. We rejected the defendant's argument because the statute "simply allow[ed] the introduction of videotaped testimony notwithstanding any provision of the Federal Rules of Evidence[,]" and said "nothing about abrogating the constitutional requirement of establishing unavailability" prior to admitting the videotaped testimony into evidence. *Id.* at 736 (internal quotation marks omitted).

**[2]** Similar to § 1324(d), § 3144 contains no language abrogating the constitutional requirement of establishing unavailability prior to the admission of preserved testimony. In fact, even after the material witnesses in this case had been deposed and released pursuant to § 3144, the government still had the obligation to establish the witnesses's unavailability in order for their testimony to be admitted into evidence. *See id.* (concluding that "demonstrating unavailability through good faith efforts to procure witnesses is still required after § 1324(d)").[3]

---

[3]Matus-Zayas raised this issue as part of his as-applied Confrontation Clause challenge discussed *infra*.

**[3]** "Because the statute easily can be read to comport with the Constitution," we similarly conclude that "[Matus-Zayas's] facial attack should be rejected." *Id.* (citation omitted).

### 2. *The Magistrate Judge's Compliance With 18 U.S.C. § 3144*

**[4]** Matus-Zayas contends that the magistrate judge failed to comply with § 3144 in denying his motion to detain the material witnesses for trial. Because Matus-Zayas raised this issue for the first time on appeal, we review for plain error.[4]

**[5]** Contrary to Matus-Zayas's assertion, the magistrate judge committed no plain error in determining that the government had sufficiently established that it was impracticable to secure the presence of the material witnesses by subpoena. Specifically, the magistrate judge noted that the government filed an affidavit stating that it would become impracticable to secure the presence of the material witnesses by subpoena if they were released to Mexico. The magistrate judge concluded that the affidavit placed Matus-Zayas's attorney on notice that the material witnesses "were citizens of another country and that the government's subpoena power would be basically ineffectual." In addition, the magistrate judge made an express finding that the government "would lose any authority over [the material witnesses] to obligate them to

---

[4]The government contends that Matus-Zayas waived his right to challenge the magistrate judge's compliance with § 3144 by raising this issue for the first time on appeal. We are not persuaded by the government's reliance on *Santos-Pinon*. In that case, the government made the witnesses unavailable by deporting them. *See Santos-Pinon*, 146 F.3d at 736. We reasoned that the objection was waived because it was made too late for corrective action to be taken. *See id.* No similar situation exists in this case. The testimony of the witnesses was preserved, and Matus-Zayas's challenge is based on the magistrate judge's perceived failure to comply with the provision of § 3144 rather than government action rendering the witnesses unavailable.

return for the giving of testimony" if they were released from custody. The magistrate judge's decision to detain the witnesses was entirely consistent with the statute and our precedent. *See Torres-Ruiz v. U.S. Dist. Court for the S.D. of Cal.*, 120 F.3d 933, 935 (9th Cir. 1997) (per curiam) (holding that pursuant to § 3144 "a person may be detained in custody as a material witness in the criminal proceeding if it is shown that it may become impracticable to secure the presence of the person by subpoena." ) (citation and internal quotation marks omitted).

**[6]** Matus-Zayas also failed to establish that the magistrate judge plainly erred when he permitted the government to depose the material witnesses, and then ordered their release. In *Torres-Ruiz*, we expressly adopted the reasoning of the Fifth Circuit in *Aguilar-Ayala v. Ruiz*, 973 F.2d 411 (5th Cir. 1992), that when Rule 15(a) and § 3144 are read together, a "district court *must* order [a material witness'] deposition and prompt release" when it has been demonstrated that the material witness' "testimony can adequately be secured by deposition, and that further detention is not necessary to prevent a failure of justice." *Torres-Ruiz*, 120 F.3d at 935 (citations and internal quotation marks omitted) ( emphasis in the original).

The magistrate judge concluded that the material witnesses's testimony could adequately be secured by deposition testimony. In doing so, the magistrate judge explicitly noted that Matus-Zayas would have the "opportunity to conduct cross-examination of the material witnesses" during the depositions, and that because the depositions would be recorded by video-tape, the jury would have the ability to assess the witnesses's "demeanor and credibility, inflection, intonation, and anything else" if the witnesses's testimony was later introduced into evidence at trial.

Notably, Matus-Zayas does not even allege that a failure of justice ensued from the witnesses's release from custody following the depositions. Instead, he insists that the magistrate

judge erred[5] simply because she permitted the witnesses to be deposed and released without a motion from each witness. Essentially, he argues that the government was required to retain custody of the witnesses until they requested otherwise — an argument we find entirely unpersuasive in light of our holding in *Torrez-Ruiz* and the government's reliance on Rule 15(a)(1). Accordingly, we conclude that Matus-Zayas has failed to identify any plain error committed by the magistrate judge in ordering the material witnesses's depositions and subsequent release. *See Torres-Ruiz*, 120 F.3d at 935.

### 3. The District Court's Admission of the Deposition Testimony

Matus-Zayas contends that his Confrontation Clause rights were violated when the videotaped deposition testimony was admitted at trial despite the fact the government never provided evidence to establish that the material witnesses were unavailable.[6] We review this issue for plain error.[7] *See Hagege*, 437 F.3d at 956.

---

[5]Because Matus-Zayas did specifically argue to the district court that the material witnesses were required by Rule 15 to file their own motion to be deposed, we review that aspect of his claim *de novo*. *See Fort*, 472 F.3d at 1109.

[6]Matus-Zayas also appears to allege that he was denied the right to effective cross-examination when he was not represented by his attorney of record during the depositions. We have previously held that "[c]ross-examination is effective under the Sixth Amendment as long as the jury receives sufficient information to appraise the biases and motivations of the witness." *United States v. Carr*, 18 F.3d 738, 740-41 (9th Cir. 1994) (citation and internal quotation marks omitted). Although Matus-Zayas was not represented by his attorney of record during the depositions, he was represented by an attorney who was able to cross-examine the material witnesses. Matus-Zayas does not allege that the jury was deprived of the ability to appraise the biases and motivations of the material witnesses based upon the cross-examination that was actually conducted. Therefore, we conclude that the mere fact that a different attorney cross-examined the material witnesses did not constitute a violation of Matus-Zayas's Sixth Amendment rights. Id.

[7]Matus-Zayas contends that he preserved this issue for appeal by raising

### a.    The Existence of Plain Error

**[7]** It is well-established that "[t]he Sixth Amendment of the U.S. Constitution guarantees an accused the right to be confronted with the witnesses against him." *United States v. Norwood*, 603 F.3d 1063, 1068 (9th Cir. 2010), *as amended* (citation and internal quotation marks omitted), *cert. denied*, 131 S. Ct. 225 (2010). "Testimonial statements of witnesses absent from trial have been admitted only where the declarant is unavailable, and only where the defendant has had the prior opportunity to cross-examine." *Id.* (citation and alteration omitted). "The constitutional requirement that a witness be unavailable before his prior testimony is admissible stands on separate footing that is independent of and in addition to the requirement of a prior opportunity for cross-examination." *United States v. Yida*, 498 F.3d 945, 950 (9th Cir. 2007) (citation and internal quotation marks omitted).

**[8]** "A witness is considered unavailable for purposes of the Confrontation Clause if the prosecutorial authorities have made a good-faith effort to obtain his presence at trial." *Forn v. Hornung*, 343 F.3d 990, 995 n.3 (9th Cir. 2003), *as amended* (citation and internal quotation marks omitted). In the detained material witness context, the government typically "bears the burden of proving the [material] witness' unavailability as a predicate to the admission of the [material

a Confrontation Clause objection in the motion he filed to detain the material witnesses for trial. However, Matus-Zayas's Confrontation Clause objection was raised prior to the time the depositions were taken. Pursuant to our precedent, Matus-Zayas's Confrontation Clause rights were not implicated until the deposition testimony was sought to be introduced into evidence. *See Santos-Pinon*, 146 F.3d at 737 n.4 ("Only when deposition testimony is sought to be introduced in evidence are the defendant's confrontation rights truly implicated . . .") (citation and parentheses omitted). Because Matus-Zayas failed to raise a Confrontation Clause objection at the time the deposition testimony was introduced into evidence, plain error review applies. *See Hagege*, 437 F.3d at 956.

witness'] deposition testimony." *Aguilar-Ayala*, 973 F.2d at 417-18 (citation omitted); *see also Santos-Pinon*, 146 F.3d at 736 (noting that "demonstrating unavailability through good faith efforts to procure witnesses is still required after § 1324(d)"); *United States v. Fuentes-Galindo*, 929 F.2d 1507, 1511 (10th Cir. 1991) (concluding that deposition testimony of a detained material witness was inadmissible when the government did not "meet its burden" of "demonstrat[ing] a 'good faith' effort or use 'reasonable means' in attempting to obtain the three material witnesses' presence at trial").

**[9]** In this case, it is undisputed that the government failed to present any evidence at trial to establish that efforts were made to procure the witnesses's presence. As a result, the district court did not make any findings on the record that the material witnesses were unavailable. The government now seeks to establish for the first time on appeal that it made a good faith effort to procure the material witnesses's presence at trial. Specifically, the government points to a letter written to the material witnesses's attorney approximately one month prior to trial which requested the material witnesses's presence to testify at trial. The letter also indicates that the government offered to pay for the material witnesses's travel expenses. The government alleges that "neither this letter nor any other evidence about the government's efforts to secure the witnesses' attendance" was introduced at trial "because [Matus-Zayas] did not object at trial to the admission of the depositions on any grounds[.]"

**[10]** Unfortunately for the government, our precedent dictates that, even absent an objection by the defendant, the obligation remains on the government to provide evidence at trial demonstrating the witness's unavailability as a predicate to the admission of the material witness's testimony. In *United States v. Vasquez-Ramirez*, 629 F.2d 1295, 1297 (9th Cir. 1980) (per curiam), we relied on *United States v. Provencio*, 554 F.2d 361 (9th Cir. 1977) (per curiam), *as modified*, to hold that "it was plain error to permit the introduction of

depositions of alien witnesses without any proof that the deposed witnesses were unavailable and without a stipulation permitting the use of the depositions." This language compels the conclusion that the district court also committed plain error in this case by admitting the deposition testimony into evidence without any showing by the government at trial that the material witnesses were unavailable.

To avoid committing plain error, the district court should have followed our well-established precedent and required the government to place on the record some evidence of the continued unavailability of the material witnesses. *See Vasquez-Ramirez*, 629 F.2d at 1297. Indeed, such a showing is necessary to avoid a successful Confrontation Clause challenge. *See Santos-Pinon*, 146 F.3d at 736 (discussing the "constitutional requirement of establishing unavailability") (internal quotation marks omitted). The government could have met its obligation by detailing its efforts to procure the witnesses's presence at the trial and by making a showing that despite its efforts, the witnesses remained unavailable. This required showing is not unique to the facts of this case. Indeed, the government is routinely required to demonstrate the unavailability of witnesses prior to using preserved testimony. *See Jackson v. Brown*, 513 F.3d 1057, 1083 (9th Cir. 2008) ("[T]he prosecution may introduce the prior testimony of a witness without running afoul of the Sixth Amendment . . . [if] the prosecutor . . . prove[s] that the witness is unavailable . . . and if the defendant "had the opportunity to cross-examine the witness at the prior hearing.") (citations omitted).

**[11]** Because the government failed to meet its burden of establishing at trial that the material witnesses were unavailable, we conclude that admission of the depositions at trial was "error" that was "plain" and that affected Matus-Zayas' substantial Confrontation Clause rights. *Hammons*, 558 F.3d at 1103; *see also Vasquez-Ramirez*, 629 F.2d at 1297 (describing the right of confrontation as a "fundamental constitutional right[ ]").

### b.   *Exercise of Discretion to Grant Relief*

**[12]** Having determined that the trial court committed plain error that affected Matus-Zayas's substantial rights, we may exercise our discretion to grant relief if we are persuaded that the error "seriously affect[ed] the fairness, integrity, or public reputation of judicial proceedings." *Hammons*, 558 F.3d at 1103 (citation omitted).

**[13]** In *Provencio*, we concluded that reversible error occurred because the government failed to introduce proof that the deposed material witnesses were unavailable, notwithstanding the fact they "were not released [from custody] and were still available at the time of trial." *Provencio*, 554 F.2d at 362. Unlike in *Provencio*, it is not evident from this record that the material witnesses were available for trial. Notably, Matus-Zayas does not allege that the witnesses were in fact available, and he does not assert that the deposition testimony would not have been admitted had he made a proper objection at trial. In fact, had Matus-Zayas raised a Confrontation Clause objection at trial, the government likely would have provided evidence to establish that a good faith effort was made to produce the material witnesses for trial. Because we are not persuaded that either "the fairness, integrity, or public reputation of [the] judicial proceedings" was adversely affected, *Hammons*, 558 F.3d at 1103 (citation omitted), we decline to exercise our discretion to grant relief.

## B.   Federal Rule of Criminal Procedure 15[8]

---

[8]Fed. R. Crim. P. 15 provides in relevant part:

**(a) When Taken.**

> **(1) In General.** A party may move that a prospective witness be   deposed in order to preserve testimony for trial. The court may grant the motion because of exceptional circumstances and in the interest of justice. If the court orders the deposition to be taken, it may also require the deponent to produce at the deposition any designated material that is not

**[14]** Matus-Zayas argues that the district court committed two different procedural errors in applying Rule 15. First, Matus-Zayas contends that the district court failed to comply with Rule 15(a)(2) when it did not require the material witnesses to file written requests to be deposed. Second, Matus-Zayas alleges that the district court did not comply with Rule 15(a)(2) when it failed to require the material witnesses to sign their deposition transcripts under oath.[9]

Matus-Zayas's first argument conflates the standards under Rule 15(a)(1) and (2). As Matus-Zayas correctly notes, Rule 15(a)(2) provides that "[a] *witness* who is detained under 18 U.S.C. § 3144 may request to be deposed by filing a written motion and giving notice to the parties . . ." Fed. R. Crim. P. 15(a)(2) (emphasis added). Matus-Zayas, however, ignores Rule 15(a)(1), which unlike Rule 15(a)(2), provides that *any* "party may move that a prospective witness be deposed in order to preserve testimony for trial." Fed. R. Crim. P. 15(a)(1).

**[15]** At the hearing on Matus-Zayas's motion to detain the material witnesses, the magistrate judge made clear that he

---

privileged, including any book, paper, document, record, recording, or data.

**(2) Detained Material Witness.** A witness who is detained under 18 U.S.C. § 3144 may request to be deposed by filing a written motion and giving notice to the parties. The court may then order that the deposition be taken and may discharge the witness after the witness has signed under oath the deposition transcript.

[9]The government urges us to conclude that Matus-Zayas waived his right to argue that the district court failed to comply with Rule 15. As discussed in note 5 above, Matus-Zayas specifically argued the first asserted error in the district court. Although he did not specifically raise the second asserted error, he generally alleged in his memorandum supporting his motion to detain the material witnesses that there was a lack of compliance with Rule 15. Therefore, we review for plain error rather than treating the second asserted error as waived. *See Baramdyka*, 95 F.3d at 844.

was permitting the depositions to proceed pursuant to Rule 15(a)(1), and not Rule 15(a)(2), when he noted that "[a] party may move, and the government has moved to take their depositions, that a prospective witness be deposed in order to preserve the testimony for trial." The magistrate judge also referenced the "exceptional circumstances standard" contained in Rule 15(a)(1). Because Rule 15(a)(1) permits *any* party to move that a prospective witness be deposed, we conclude that the magistrate judge committed no error by permitting the government to move to depose the material witnesses rather than requiring the material witnesses to make the motion.

We further note that at least one court has expressly rejected the notion that only material witnesses may move to have their depositions taken. In *United States v. Lai Fa Chen*, 214 F.R.D. 578, 580 (N.D. Cal. 2003), a magistrate judge held that "Rule 15 and 18 U.S.C. § 3144 are inextricably bound even when the government, and not the detained material witness, moves for a Rule 15 deposition." The magistrate judge noted that it would be illogical "to refrain from reading Rule 15 in conjunction with 18 U.S.C. § 3144 when the government is the moving party, [because] the [c]ourt would: (1) needlessly require serial Rule 15 motions from each material witness; (2) deter the government from playing an active role in ensuring that material witnesses are only detained as long as necessary to secure their testimony; and (3) forestall the government from effective enforcement of its immigration laws." *Id.* at 581 (footnote reference omitted). According to the magistrate judge, "[t]he better practice, in the detained material witness context, is to consider the impact that an order permitting depositions would have on the detained material witness even when a party and not the witness makes the motion." *Id.* This reasoning persuades us that Matus-Zayas's argument is unavailing.

[16] Matus-Zayas's second argument presents a closer question. In contrast to Rule 15(a)(2), Rule 15(a)(1) does not

contain a requirement that witnesses sign their own deposition transcripts under oath. *Compare* Fed. R. Crim. P. 15(a)(1) *with* Fed. R. Crim. P. 15(a)(2). Nevertheless, an argument could be made that Rule 15(a)(2), which specifically addresses detained material witnesses should have been applied by the court and its failure to abide by the provisions of Rule 15(a)(2) constituted plain error. *See San Luis Obispo Mothers for Peace v. Nuclear Reg. Comm'n*, 635 F.3d 1109, 1117 (9th Cir. 2011) (observing that a specific provision "qualif[ies] and suppl[ies] exceptions to the general [provision].") (citation omitted).

**[17]** Matus-Zayas, however, does not allege that a review of the transcripts was ever requested or that changes were made. The jury viewed videotapes of the depositions, which would have made them aware of any inaccuracy in the deposition transcripts. Indeed, Matus-Zayas "has not cited any specific examples of possible inaccuracies in the deposition testimony" and has not "demonstrated any prejudice which might have resulted from the failure of the deponents to review and sign the transcripts of their testimony." *United States v. Campbell*, 845 F.2d 1374, 1379 (6th Cir. 1988) (describing harmless error). Accordingly, any error in admitting the unsigned depositions at trial did not affect Matus-Zayas's substantial rights. *See Hammons*, 558 F.3d at 1103.

## C.   District Court General Order 05-34[10]

---

[10]General Order 05-34 provides in relevant part:

3.) The attorney for a defendant charged by complaint, indictment, or information shall have three working days, after notification orally or in writing by the District Judge or Magistrate Judge that a witness is being detained in the case, within which to interview a detained material witness who is an adult. . .

. . .

5.) The deposition shall be conducted in accordance with Rule 15, Federal Rules of Criminal Procedure and under the general supervision of a Magistrate Judge. . .

**[18]** Matus-Zayas asserts that the district court failed to comply with district court General Order 05-34 (General Order) of the United States District Court for the District of Arizona by not affording his attorney "three working days in which to interview the material witnesses." Matus-Zayas also contends that the General Order "is in direct conflict with Rule 15 . . . which requires deponents to attest to the accuracy of the deposition transcripts."[11] We disagree.

**[19]** Paragraph 3 of the General Order provides that an attorney for a defendant "shall have three working days, after notification orally or in writing by the District Judge or Magistrate Judge that a witness is being detained in the case, within which to interview a detained material witness who is an adult." Matus-Zayas's attorney was appointed in this case on June 16, 2008, and the record reflects that she never requested to interview the detained material witnesses at any time prior to their release. Paragraph 3 does not require the district court to ensure that the interview takes place absent a request by the defendant's attorney. Therefore, we conclude that no plain error was committed.

Matus-Zayas has also failed to establish that the General Order conflicts with Rule 15. As noted above, Rule 15(a)(1) does not require deponents to attest to the accuracy of their depositions unless review is requested and changes are made. Moreover, the General Order expressly states that depositions of material witnesses "shall be conducted in accordance with Rule 15[.]" Therefore, we conclude that this argument lacks merit.

---

[11]The government asserts that Matus-Zayas waived his right to challenge the district court's compliance with the General Order. Because Matus-Zayas' arguments on this issue parallel those made in his motion to detain the material witnesses, *see supra* n. 6, we similarly review for plain error.

## IV. SUMMARY

Matus-Zayas's facial challenge to 18 U.S.C. § 3144 fails. The statute does not abrogate the constitutional requirement of establishing the unavailability of a material witness prior to allowing preserved testimony to be introduced at trial. The magistrate judge complied with the provisions of § 3144 by considering the affidavit submitted by the government, determining that it would become impracticable to secure the presence of the material witnesses by subpoena, and authorizing the preservation of the witnesses's testimony by deposition prior to releasing them. However, the district court did plainly err when it allowed admission of the deposition testimony without requiring the government to present proof of the witnesses's continued unavailability. Nevertheless, we decline to exercise our authority to grant relief because we are not persuaded that the error adversely affected "the fairness, integrity, or public reputation of [the] judicial proceedings." *Hammons*, 558 F.3d at 1103 (citation omitted). Similarly, any error committed by the district court in its application of Rule 15 of the Federal Rules of Criminal Procedure did not affect Matus-Zayas's substantial rights. Finally, the district court committed no plain error when its actions are measured against General Order 05-34.

**AFFIRMED.**