Christopher J. Burke, UNITED STATES MAGISTRATE JUDGE
Presently before the Court in this sealed grand jury proceeding, are two motions (the "Motions"), one filed by Witness 1 (D.I. 6, Misc. No. 18-MC-103), and one filed by Witness 2 and together with Witness 1 the "Movants"), (D.I. 6, Misc. No. 18-MC-230). The Court has previously deemed both men to be material witnesses *441 in this grand jury matter, and has ordered that they be released from custody on certain conditions; among these conditions are that, absent further order of the Court or permission of the United States of America (the "Government" or the "United States"), the men must reside in Delaware and may not leave the United States while the grand jury investigation (the "investigation") is proceeding. (D.I. 4, Misc. No. 18-MC-103; D.I. 7, Misc. No. 18-MC-230) With their Motions, both men seek an order directing that they be deposed pursuant to Federal Rule of Criminal Procedure 15(a)(2), so that they can thereafter be repatriated to their home countries. For the following reasons, the Court hereby DENIES the Motions without prejudice, in the manner set forth below.
I. BACKGROUND
The investigation at issue relates to a ship, the [redacted] ("the ship"). (See, e.g. , D.I. 3, Misc. No. 18-MC-103) The Government alleges that on or around November 2, 2017 (and on at least two prior occasions in 2017), oil was discharged from the ship into open water; it is investigating whether this activity amounts to or led to criminal violations of the Act to Prevent Pollution from Ships, see 33 U.S.C. § 1908(a), or the crimes of falsification of records in a federal investigation, see 18 U.S.C. § 1915, obstruction of proceedings before agencies, see 18 U.S.C. § 1505, and aiding and abetting such crimes, see 18 U.S.C. § 2. (See, e.g., id. at ¶¶ 1-3; id. at Affidavit at ¶ 12; D.I. 9 at 1-2, at ¶ 2, Misc. No. 18-MC-230) The Government has identified two sets of targets (the "targets") of the investigation: (1) the ship's owner [redacted] and its manager/operator, (the corporate targets); and (2) the ship's Chief Officer, the Chief Officer The Government has not indicated to the Court that there are any other current targets.
On December 7, 2017, United States Coast Guard ("Coast Guard") inspectors boarded the ship in Delaware and interviewed members of the ship's crew, including Witness 1 who is a Greek citizen, and Witness 2 a citizen of the Philippines. (D.I. 3 at Affidavit at ¶¶ 11, 19-20, Misc. No. 18-MC-103; D.I. 2 at Affidavit at ¶¶ 11, 19, Misc. No. 18-MC-230) Witness 1 worked aboard the ship during one of the suspected discharges of oil and has knowledge of statements made by the Chief Officer about the alleged offenses; he is said to have heard the Chief Officer make statements acknowledging the illegal discharge and is said to be able to prove that certain entries in the ship's logs relevant to the discharge are false. (D.I. 3 at Affidavit at ¶ 19, Misc. No. 18-MC-103) Witness 2 worked as the pumpman on the ship; he is said to have been ordered by the Chief Officer to open certain valves that discharged oil on November 2, 2017 from the ship's pumps and to have witnessed crewmembers cleaning up oil discharge from the side of the ship on the next day (as well as on a prior occasion). (D.I. 2 at Affidavit at ¶ 15, Misc. No. 18-MC-230)
The Coast Guard prohibited the ship from leaving Delaware until corporate targets entered into a security agreement (the "agreement") with the United States that required corporate targets to, among other things: (a) leave in the United States 10 crewmembers (including the Movants and the Chief Officer); (b) continue to pay the salaries for those crewmembers; (c) provide the crewmembers with a $ 50 per diem for their meals; (d) house the crewmembers in the District of Delaware; and (e) obtain and hold the crewmembers' passports. (D.I. 10 at 4-5, D.I. 11 at Memorandum at 2 & ex. C, Misc. No. 18-MC-230) The parties did enter such an agreement in December 2017; on or about December 28, 2017, the crewmembers were paroled into the United States, placed in hotels in or around Wilmington, Delaware and were informed that they were not *442 permitted to leave the District of Delaware until the Government agreed to their release. (D.I. 10 at 4-5, D.I. 11 at Memorandum at 2 & ex. C, Misc. No. 18-MC-230)[1] Pursuant to the agreement, if one of the crewmembers requests return of his passport from the corporate targets is to provide the Government with advance notice before handing over the passport, (D.I. 11 at Memorandum, ex. C at 10, Misc. No. 18-MC-230), so that the Government could (if it wished to do so), move to have the crewmember deemed a material witness to the investigation. By its terms, the agreement (to which Movants were not a party), remains in effect until all criminal proceedings arising from this case have been completed, or a security bond is returned by the United States. (Id. at 13)
Also on December 28, 2017, nine of the 10 crewmembers (all but the Chief Officer) were served with grand jury subpoenas relating to the investigation. (D.I. 10 at 5 & n.5, D.I. 17 ("Tr.") at 9-10, Misc. No. 18-MC-230) To date, however, no charges have resulted from the investigation, and neither Movant has provided testimony before a grand jury. (D.I. 6 at 2, Misc. No. 18-MC-103; D.I. 11 at Memorandum at 2, Tr. at 38, Misc. No. 18-MC-230)
In April 2018 (as to Witness 1) and July 2018 (as to Witness 2), the Government filed motions with the Court seeking to have the men deemed material witnesses pursuant to 18 U.S.C. § 3144 (" Section 3144"), after each man requested that his passport be returned to him. (D.I. 2, Misc. No. 18-MC-103; D.I. 3, Misc. No. 18-MC-230) Section 3144 states:
If it appears from an affidavit filed by a party that the testimony of a person is material in a criminal proceeding, and if it is shown that it may become impracticable to secure the presence of the person by subpoena, a judicial officer may order the arrest of the person and treat the person in accordance with the provisions of [ 18 U.S.C. §] 3142 [.] No material witness may be detained because of inability to comply with any condition of release if the testimony of such witness can adequately be secured by deposition, and if further detention is not necessary to prevent a failure of justice. Release of a material witness may be delayed for a reasonable period of time until the deposition of the witness can be taken pursuant to the Federal Rules of Civil Procedure.
18 U.S.C. § 3144. But instead of seeking the Movants' detention (i.e., that they be jailed) pursuant to Section 3144, the Government asked the Court to issue conditions of release regarding both men; among the requested conditions were that Movants must allow corporate targets to hold Movants' passport and that Movants' travel would be restricted to this District (unless Movants received prior permission from the Coast Guard to the contrary). The Court granted the Government's request in both cases (without objection from Movants) and issued the requested conditions of release on April 5, 2018 (as to Witness 1) and July 26, 2018 (as to Witness 2). (D.I. 4, Misc. No. 18-MC-103; D.I. 7, Misc. No. 18-MC-230)
*443 On July 6, 2018 (in Witness 1 case) and on July 23, 2018 (in Witness 2 case), the Movants filed the instant Motions. (D.I. 6, Misc. No. 18-MC-103; D.I. 6, Misc. No. 18-MC-230) The Government and the Chief Officer oppose the Motions. Corporate targets does not oppose the Motions (so long as the Court orders that certain other procedures be followed, including that all of the ship's remaining crewmembers in Delaware also be deposed). Briefing on the Motions was completed on August 6, 2018, and the Court held a hearing on the Motions on August 8, 2018. (D.I. 23, Misc. No. 18-MC-103; D.I. 12, Misc. No. 18-MC-230; Tr. at 1)[2]
II. STANDARD OF REVIEW
The Motions are brought pursuant to Rule 15(a)(2), which works in conjunction with Section 3144. Rule 15(a) reads as follows in its entirety:
(a) When Taken.
(1) In General. A party may move that a prospective witness be deposed in order to preserve testimony for trial. The court may grant the motion because of exceptional circumstances and in the interest of justice. If the court orders the deposition to be taken, it may also require the deponent to produce at the deposition any designated material that is not privileged, including any book, paper, document, record, recording, or data.
(2) Detained Material Witness. A witness who is detained under 18 U.S.C. § 3144 may request to be deposed by filing a written motion and giving notice to the parties. The court may then order that the deposition be taken and may discharge the witness after the witness has signed under oath the deposition transcript.[3]
The burden of proof as to a Rule 15(a) motion rests with the movant, who must demonstrate the necessity for preserving a prospective witness' testimony by deposition. United States v. Ismaili , 828 F.2d 153, 159 (3d Cir. 1987). And in assessing a Rule 15 motion, "considerations of materiality (of the testimony) and unavailability (of the witnesses) remain critical." Id.
The parties disagree over what is the appropriate legal standard that the Movants must meet in order to prevail on their Rule 15(a)(2) Motions.[4] Some (the Government, *444 Witness 2) suggest that the Movant must show "exceptional circumstances" are present and that it is in the "interests of justice" that a deposition take place (the "exceptional circumstances" standard), pointing to language to that effect found in Rule 15(a)(1). (D.I. 9 at 3-4, D.I. 12 at 4, Misc. No. 18-MC-230) Others Witness 1, corporate targets, the Chief Officer assert that because these are Rule 15(a)(2) Motions, Rule 15(a)(1)'s language does not apply. Instead, they argue that the appropriate standard is drawn from Section 3144's requirement (referenced in Rule 15(a)(2) )-that Movants show that their testimony "can be adequately be secured by deposition," and that further detention would not be "necessary to prevent a failure of justice." (D.I. 11 at Memorandum at 3, Misc. No. 18-MC-230; Tr. at 54-55, 99)
The Court concludes that the "exceptional circumstances" standard does not apply, for a few reasons.[5] As an initial matter, that standard, while found in the text of Rule 15(a)(1), simply is not included in Rule 15(a)(2). And though the heading of Rule 15(a)(1) states that its contents apply "In General[,]" Fed. R. Crim. P. 15(a)(1) (emphasis omitted), it is sensible to read this as a statement by the drafters that "In general, the requirements of Rule 15(a)(1) apply to depositions in a criminal case, except for what we are about to say about the special category of material witness depositions in Rule 15(a)(2)."
Moreover, it makes sense why a material witness would not have to show "exceptional circumstances" to prompt a Rule 15 deposition, while parties to the case would need to make that showing. Depositions in criminal cases are disfavored, see Ismaili , 828 F.2d at 159, so it is understandable why the Government or a defendant might need to meet a very high *445 bar to prompt the taking of such a deposition. But material witnesses are in a unique and difficult position as compared to others involved in a criminal case, in that material witnesses are detained (or, here, de facto detained) but have not been charged with any crime. It stands to reason that someone in those shoes would have to meet a lesser burden than would parties to the case (i.e., than the Government, who otherwise controls the prosecution of the case and is not subject to detention at all, or a defendant who, though he might face pre-trial detention in a jail, is also someone as to whom a grand jury has found there is probable cause to believe he has committed a federal crime). (Tr. at 55)
Lastly, the Court notes that numerous other courts that have considered the question have determined that the "exceptional circumstances" standard does not apply to Rule 15(a)(2) motions. See United States v. Lai Fa Chen , 214 F.R.D. 578, 579-80 & n.2 (N.D. Cal. 2003) ("A party seeking to take a Rule 15 deposition must make a showing of 'exceptional circumstances' as required by Rule 15(a)(1). Where a material witness, instead, moves for a Rule 15 deposition, he need not show such 'exceptional circumstances.' Fed. R. Crim. P. 15(a)(2)."); see also In re Mercator Lines Ltd. (Singapore) Pte. Ltd. , Misc. No. 11-00024-CG-C, 2011 WL 10637454, at *9 (S.D. Ala. Oct. 25, 2011) (same); United States v. Santos , No. 10-10031-CR, 2011 WL 1196022, at *3 (S.D. Fla. Mar. 29, 2011) (same); In re Grand Jury Proceedings , Docket No. 10-mj-57-P-JHR, D.I. 50 at 6 n.5 (D. Me. Apr. 16, 2010) (same). This too has impacted the Court's decision.
Thus, in considering the Motions, the Court will look to the standard set out by Section 3144, incorporated by reference into Rule 15(a)(2). In that regard, it will assess whether the testimony of the Movants "can adequately be secured by deposition, and [whether] further detention is not necessary to prevent a failure of justice." 18 U.S.C. § 3144.
III. DISCUSSION
Resolution of the instant Motions is difficult, because the parties on both sides make compelling arguments. The Court will take some time to lay out those arguments, as they inform its decision below.
On the one hand, the Government and the Chief Officer point to a number of reasons why pre-indictment depositions might be inadequate and could (depending on what happens in the future) prompt a failure of justice.
First, it is clear that the witnesses each have material testimony. Indeed, neither Movant challenges the Court's prior determinations that they both have material testimony as to this criminal case. It is surely preferable that witnesses in criminal cases with material testimony are available to testify at any future criminal trial.
Second, in terms of the Movants' potential unavailability, Movants are unlike a witness who is ill and who will likely have died by the time of trial. In re Grand Jury Proceedings , 697 F.Supp.2d 262, 273-75 (D.R.I. 2010) (granting the government's motion to take Rule 15 depositions of material witnesses who were terminally ill and who were unlikely to be alive by the time of a future criminal trial). If these Movants are required to remain in the United States under their current conditions of release, there is every reason to believe that they then will be available to provide testimony at a future criminal trial.
In contrast, the Court has already determined that if the Movants are permitted to leave the United States, it "may be impracticable to secure" their presence at a *446 future trial. 18 U.S.C. § 3144. That is undoubtedly so as to Witness 2, who has candidly acknowledged that if he is paroled from this country, he will not be coming back in the future. (Tr. at 34, 36) As for Witness 1, he has submitted an affidavit in which he states that he will return to the United States and make himself available for any future deposition or court proceeding, if he is requested to do so by the Government, corporate targets or the Chief Officer. (Hearing Exhibit 1)[6] But there is still sufficient reason for the Court to find that Witness 1 future return to the United States is unlikely. The Government would not be able to force him to return. (Tr. at 36-37) Nor has he agreed to the posting of any security (e.g., a secured cash bond) that would be forfeited were he to fail to return upon request (and that therefore would provide increased incentive for him to appear). (Id. at 25-26) Moreover, there is reason to be skeptical that a Greek citizen-someone not likely familiar with the laws of the United States and who has previously been held in this country against his will for nearly nine months-would, after being released and permitted to return home, later willingly re-enter said country to testify at a trial. (Id. at 77)
Third-and relevant to the questions of whether Movants could be adequately deposed and whether further detention would not be necessary to prevent a failure of justice-the Court must assess how the use of any Rule 15 deposition could impact a future defendant's (i.e., corporate targets or the Chief Officer) Sixth Amendment rights (and their related Fifth Amendment rights), or impact the Government's ability to hold persons accountable for criminal wrongdoing. If Movants were deposed (and assuming that they later left this country, never to return), Rule 15 makes it clear that such a deposition is not automatically admissible at trial. Fed. R. Crim. P. 15(f) (noting that any such deposition may be used only as permitted by the Federal Rules of Evidence); see also Santos , 2011 WL 1196022, at *4 (citing cases). Rule 804(b)(1) of the Federal Rules of Evidence provides that such a deposition would amount to hearsay and would be precluded from use, unless the Movants are "unavailable" at trial and unless the party against whom the testimony is offered (e.g., the targets) had an opportunity and "similar motive" to develop the testimony by direct, cross or redirect examination at the time of that testimony. See United States v. Lombard , 72 F.3d 170, 188 (1st Cir. 1995). Additionally, use of such a deposition by the Government at trial would be precluded by the Sixth Amendment, unless: (1) the Government establishes that the Movants are unavailable; and (2) the defendants (e.g., the targets) had an adequate prior opportunity to cross-examine the Movants.[7]
*447 United States v. Matus-Zayas , 655 F.3d 1092, 1101 (9th Cir. 2011).
As to these issues, if the targets' attorneys were required to cross-examine Movants now, they could be compromised in their ability to ask important questions of the Movants. For example, what if Movants are deposed now, but then in a few months, the Government brings charges invoking legal theories or factual issues that were previously unknown to targets' counsel or that could not have been reasonably contemplated at this stage? The targets' counsel would not have known to ask questions about such theories or facts at the prior deposition. (D.I. 9 at 5, D.I. 11 at Memorandum at 3-4, Misc. No. 18-MC-230 (the Chief Officer noting that "[t]argets-not yet defendants-cannot seek to illicit testimony based on possible charges or conceivable facts in a non-existent indictment") (emphasis in original); Tr. at 74-75) Or what if Movants are deposed now, but thereafter targets' counsel develops evidence that calls into question some aspects of Movants' testimony? Or if at trial, another testifying witness says something that is inconsistent with what Movants said in their deposition? (Tr. at 64, 76) Targets' counsel would not be able to ask questions of Movants as to this new evidence or witness statements. (Id. )
In these scenarios, were the Government permitted to introduce the Rule 15 depositions at trial, that could prejudice the targets to a great degree. Cf. In re Grand Jury Proceedings , 697 F.Supp.2d at 274-75 (noting that "[p]ermitting pre-indictment depositions places citizens, who are under the spotlight of investigation but not yet formally accused, in the dangerous position of having to defend against what is intended to be trial testimony, before any formal adversary proceeding has been triggered, and without the benefit of knowing precisely the basis of the government's allegations or its legal theories[,]" and finding it a "close call" as to whether such depositions should be permitted, even where the material witnesses were terminally ill and might not survive until a future trial). Alternatively, if the Government were not later permitted to introduce such depositions (because a Court were to find that doing so would violate a defendant's Sixth Amendment rights), then it would not only have been a "waste of judicial resources to order" the depositions, (D.I. 9 at 4, Misc. No. 18-MC-230), but the Government would be without material witness testimony that might well be needed to prove its case.[8]
On the other hand, there are certainly significant and compelling arguments to be made on behalf of Movants and their Motions.
For one thing, it is not as if the targets have no information as to the nature of the current investigation. The Government's motions seeking material witness warrants laid out in some significant detail the ship-related activity that is the subject of the investigation (at least presently) and the criminal charges the Government is contemplating (at least presently). (Tr. at 34) Targets' counsel has also reviewed some other evidence in the case. (Id. at 75-76)
And most significantly, Movants are seriously burdened in light of their current conditions of release. They are not suspected of having committed any crime, or having done anything wrong, and yet they have been required to remain in the United States (either due to the agreement between corporate targets and the Government, or, much more recently, due to a Court order) for nearly nine months. They cannot return to their home. They are *448 unable to be in the same place as their family members and loved ones in Greece and the Philippines, respectively (unless those family members or loved ones have the ability to visit the United States).[9] And in terms of their day-to-day existence in the United States, they: (1) have limited knowledge of English to assist them in their activities; (2) are not able to work in any meaningful way, or to advance their skills or position in their chosen profession (though they are being paid a salary and a per diem by corporate targets; and (3) have significant restrictions on their travel. If no further action is taken by the Court, they face the prospect of indefinite de facto detention in this country, presumably until either the Government concludes its investigation without bringing charges, or until all future-charged defendants see their cases completely resolved. That could be months, or even years from now. There is no question in the Court's mind that, at some near point, "further detention [of Movants would] not [be] necessary to prevent a failure of justice[,]" 18 U.S.C. § 3144, and, indeed, it would be a "failure of justice" to continue to require that Movants remain here in Delaware. See In re Mercator Lines Ltd. , 2011 WL 10637454, at *6-9 (ordering a pre-indictment deposition of a material witness in a similar case, where the witness, a Thai citizen who did not speak English and who had numerous family members and friends in Thailand, had been released into the district approximately one month earlier and had been required to remain in the district, pending a government investigation of criminal conduct that had occurred on the ship on which he worked); United States v. Dalnave Navigation , Criminal No. 09-130, 2009 WL 743100, at *2 (D.N.J. Mar. 18, 2009) (ordering a post-indictment material witness deposition, pursuant to Rule 15(a)(2), and noting that the "Material Witnesses have been in the country against their will for over six months, with little end in sight. They have done nothing wrong. They are charged with no crimes. Their families ache for their return, but because the Government retains their passports, they are precluded from leaving the country. Enough is enough.").
In the end, the Court determines that the most appropriate resolution is to seek a middle ground. As noted above, the legal issues here are particularly complicated by the fact that the investigation is still ongoing and that no charges have been filed.[10]
*449 However, the Government reports that it is "diligently moving toward finalizing the investigation" and that it "intends to expeditiously complete its investigation." (D.I. 9 at 4-5, Misc. No. 18-MC-230) During the hearing, Government's counsel suggested the same. (Tr. at 79, 81, 90-91)
In light of this, the Motions will be denied without prejudice. The Court will schedule a status hearing in the matter a month from today's date, to give the Government the fair ability to "complete its investigation." The Court's current inclination is that, at that status hearing, it will order that depositions of (at least) Movants be taken in a short period of time thereafter and that Movants then be discharged (i.e., that they not be required to remain in this country pursuant to Court order).
IV. CONCLUSION
Movants' Motions are DENIED without prejudice. A status hearing is set in this matter for September 28, 2018 at 11:00 a.m.
The Court intends to release a publicly-available version of this Memorandum Order at the appropriate time (redacted, if necessary). By no later than September 4, 2018, any party may inform the Court by letter, of no more than three single-spaced pages, as to their view regarding: (1) when such a publicly-available version should be released; and (2) what material should be redacted from any such version (and why).
Additionally, in that same letter, any party may (but the Government must) offer its view as to whether the requirements of Federal Rule of Criminal Procedure 46(h)(2) apply to the Movants' circumstances.

Two of the 10 crewmembers, the ship's Chief Engineer [redacted] and [redacted] the ship's Bosun, were subsequently paroled out of the United States, after they signed affidavits in which they agreed to return to the country for any future proceedings relating to this case, if requested to do so. (D.I. 10 at 5 n.6, D.I. 17 ("Tr.") at 103, Misc. No. 18-MC-230) The Chief Engineer agreed to interview with counsel for the Chief Officer before his release, and he remains employed by corporate targets (Tr. at 67-68, 85-87); there was no objection by any party to his leaving the country. As for the Bosun his mother recently passed away, (id. ), and primarily in light of this, no party had an objection to his leaving the country either.

Corporate targets and the Chief Officer, through their counsel, filed briefs relevant to the instant Motions and participated the hearing on the Motions. For ease of reference, then, when the Court refers to the "parties" to this matter, it is referring not only to Movants and the Government, but also to corporate targets and the Chief Officer

The parties all presume that the Rule 15(a) permits a pre-indictment deposition of a material witness (or, at least, do not offer a substantive argument as to why the Rule does not permit such depositions). At least two courts have found that it does. In re Grand Jury Proceedings , Docket No. 10-mj-57-P-JHR, D.I. 50 at 4 (D. Me. Apr. 16, 2010); In re Grand Jury Proceedings , 697 F.Supp.2d 262, 265-72 (D.R.I. 2010). For purposes of resolving these Motions, the Court will assume arguendo that it does.

In a footnote, the Government somewhat cryptically writes that it "submits that under a strict reading of" Rule 15(a)(2), the Movants "lack[ ] standing" to request a deposition pursuant to the Rule, in that Movants are not currently "detained" (i.e., the Movants are not currently in jail, since they have been released into this District and required to follow certain conditions, including that they not leave the District without approval of the Court or the Government). (D.I. 8 at 3 n.2, Misc. No. 18-MC-103; D.I. 9 at 3 n.2, Misc. No. 18-MC-230) Movants respond that they arc subject to "de facto detention within the District of Delaware and the United States[,]" sufficient to meet the requirements of the Rule, because they are not permitted to leave the country and return to their families overseas. (See, e.g. , D.I. 12 at 2, Misc. No. 18-MC-230; see also D.I. 6 at 4, Misc. No. 18-MC-103) Multiple courts have held that witnesses in similar circumstances were "functionally detained" and thus met the requirements of the Rule. See Mercator Lines Ltd. (Singapore) Pte. Ltd. , Misc. No. 11-00024-CG-C, 2011 WL 10637454, at *8 (S.D. Ala. Oct. 25, 2011) ; In re Grand Jury Proceedings , Docket No. 10-mj-57-P-JHR, D.I. 50 at 3-4 (D. Me. Apr. 16, 2010); United States v. Maniatis , No. 07-CR-0024 DLJ, 2007 U.S. Dist. LEXIS 47543, at *3 (E.D. Cal. June 20, 2007); but see United States v. Ionia Mgmt. S.A. , Crim. No. 03:07CR134 (JBA), 2007 WL 2325199, at *2 (D. Conn. Aug. 9, 2007) ("Both the plain language of Rule 15(a)(2) and the reference in section 3144 to section 3142 suggest that once a material witness is released from detention, even with conditions, he may no longer request to be deposed."). Here, the Court need not decide the issue, and will assume arguendo that the witnesses are "detained" for purposes of Rule 15(a)(2) (such that they may invoke the Rule). It docs so both because: (1) in light of its ultimate decision to deny the Motions without prejudice, the decision on the Motions at this point would not change whether or not the Movants could bring a motion pursuant to the Rule; and (2) it is not clear that the Government is even affirmatively asserting that Movants "lack[ ] standing" to request a deposition under the Rule, in that the Government made the argument only in a footnote in its briefs and did so using language that made it unclear if it is actually advocating for the "strict reading" of the Rule that it posits.

The Court presumes that there is at least some difference between the two standards. While both implicate the concept of the "interests of justice" or "failure of justice," Rule 15(a)(1) requires that "exceptional" circumstances are at play. Presumably, "exceptional" circumstances occur very, very rarely and would strike someone as remarkable or astounding. See, e.g., United States v. Dillman , 15 F.3d 384, 389 (5th Cir. 1994) ("The words 'exceptional circumstances' bespeak that only in extraordinary cases will depositions be compelled."); United States v. Rosen , No. 1:05cr225, 2006 WL 5029996, at *1 (E.D. Va. Apr. 21, 2006) (explaining that in light of Rule 15(a)'s "explicit reference to 'exceptional circumstances,' Rule 15(a) depositions are appropriately granted only in rare circumstances"). It could well be that in some cases it would not be a "failure of justice" to order the deposition of a material witness, but that on the other hand, the circumstances of that particular case would not be "exceptional."

It might also be the case that if Witness 1 is released after a deposition, subject to the imposition of a personal recognizance bond, that were he to later default on his promise to return, he could be subject to an outstanding federal warrant. (Tr. at 44-45) This might provide some additional assurance that [redacted] would abide by his promise to return (assuming he wishes to work in the United States in the future and would be worried that if such a warrant issued, he could not safely return to this country without being jailed). (Id. at 44-45, 64-65, 96)

In the Sixth Amendment context, the defendant's counsel may be deemed to have had an adequate opportunity to cross-examine the movant at a prior Rule 15 deposition, even if the attorney did not then have "complete knowledge of the evidence" or a "clairvoyant understanding of how the trial [would later] play out" so long as counsel had the meaningful ability to effectively question the witness about the key issues in the case. United States v. Caramadre , 882 F.Supp.2d 295, 301 (D.R.I. 2012) ; see also Delaware v. Van Arsdall , 475 U.S. 673, 679, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986).

The witnesses' future absence could also make it more difficult for the Government to investigate the case-in that if it were to develop new evidence after the depositions, it would not have the easy ability to question Movants regarding that information.

Witness 2 has immediate family in the Philippines. (Tr. at 40) His child is finishing high school and will start college next year. (Id. ) [Redacted] is not married and does not have children; his girlfriend recently visited him in Delaware. (Id. at 69-70, 107) His immediate family live in Greece, however, and his close relative is said to be in ill health. (Id. at 107)

Moreover, although corporate targets, the Chief Officer and Movants have requested that prior to any pre-indictment deposition, the Government be required to provide it with "full and complete discovery pursuant to [, inter alia ] Fed. R. Crim. P. 16 [and] 18 U.S.C. § 3500 (the 'Jencks Act')[,]" (D.I. 10 at 10, Misc. No. 18-MC-230; see also D.I. 11 at Memorandum at 7, D.I. 12 at 8, Misc. No. 18-MC-203), and even though at least one court has ordered the same as to a pre-indictment Rule 15 deposition, see In re Grand Jury Proceedings , 697 F.Supp.2d at 275, the Court is doubtful that it has the authority to do so pre-indictment. After all, Rule 16 is typically understood to apply in the context of a criminal case in which a person or entity has been charged with a crime; the entirety of the Rule makes reference to information that "the defendant" is entitled to. Fed. R. Crim. P. 16. No one has been charged here and there are no "defendants" in this matter. And the Jencks Act is implicated when a witness called by the United States has testified at trial on direct examination, 18 U.S.C. § 3500(b), which of course has not happened here. Rule 15, in contrast, requires only that certain limited discovery be provided prior to the deposition. Fed. R. Crim. P. 15(e)(3). Of course, the Government might have an interest in voluntarily providing more fulsome pre-deposition discovery (if it wants to make every effort to ensure that a deposition might later be admitted at trial over objection of a prospective defendant). (Tr. at 32-33, 88) But the Court is unaware of what authority it has to order the Government to provide such materials in a pre-indictment/grand jury investigation context. Cf. United States v. Cooper , 947 F.Supp.2d 108, 116 (D.D.C. 2013) ; (Tr. at 32, 64, 87-88).